**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------

Towaki Komatsu,                                          **Case No.:**  20-cv-10942

               Plaintiff,                          **AMENDED COMPLAINT**

     -vs-                                           **JURY DEMAND**

The City of New York, NYPD Officer Saquoi Harris, (shield
#: 2350), NYPD Officer Steven Perez (shield #: 23485),
NYPD Officer Liang Lin, NYPD Officer Robert Holmes,
NYPD Officer Rodriguez, NYPD Sergeant Frank Amill,
NYPD Captain Joseph Tompkins,, NYPD Jane Doe1, NYPD
John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John
Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John
Doe7, Neelam Chhikara, Darcel Clark, Alana Brady,

- All of the defendants listed above who are people are being
  sued in their individual and official capacities,

               Defendants.

-------------------------------------------------------------------------------

## <u>TABLE OF CONTENTS</u>

I.     Preliminary Remarks .......................................................................................... 1

II.    Jurisdiction ......................................................................................................... 2

III.   Parties ................................................................................................................. 3

IV.   Background Facts ............................................................................................. 15

V.     Statement of Facts ........................................................................................... 15

VI.   Causes of Action ............................................................................................. 50

VII.   Jury Demand .................................................................................................... 60

VIII.   Prayer for Relief .............................................................................................. 61

Plaintiff Towaki Komatsu (hereinafter referred to in the first-person as "I", "me", and "my"), proceeding pro se in this action, does hereby state and allege all that follows in this amended complaint.

## PRELIMINARY REMARKS

1.      This amended complaint has been prepared in accordance with the following findings from the controlling court decision that was issued in _Wynder v. McMahon_, 360 F.3d 73 (2d Cir. 2004):

> "Based on the foregoing, we find that Wynder's second amended complaint is sufficient to meet the lenient standard of Rule 8. Dismissal pursuant to the rule "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." _Salahuddin,_ 861 F.2d at 42. This is not such a case. While we have insisted that complaints be concise "because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage," _id._ (internal quotation marks omitted), _see also_ Fed.R.Civ.P. 8(e), plaintiff's long submission does not overwhelm the defendants' ability to understand or to mount a defense. And while we of course believe that "form matters in our system of adjudication," _Webb v. Goord,_ 340 F.3d 105, 112 (2d Cir.2003) (emphasis deleted), this pleading is not so lacking in form as to warrant dismissal."

2.      My use of "my Bronx criminal case" in this amended complaint refers to _People v. Komatsu_, No. 2017BX048917 (Bronx Crim. Ct. Jan. 23, 2020) that was an entirely frivolous and malicious case and abuse of process and First Amendment retaliation that was commenced against me on or about 12/26/17 as a result of my having been illegally arrested by Defendants Saquoi Harris, Steven Perez, and other members of the NYPD on 12/26/17 before it was both dismissed in my favor and sealed on 1/23/20.

3.      My use of "my ass-kicking of the USMS, CSOs & SDNY" in this amended complaint refers to _USA v. Komatsu_, No. 18-cr-651(ST)(E.D.N.Y. Oct. 21, 2019) that was an entirely frivolous and malicious case and abuse of process that was commenced against me on or about 8/8/18 before it was both dismissed in my favor on 10/21/19 by U.S. Magistrate Judge Steven

Tiscione.

4.      Acronyms and aliases in the second column of the following table will be used

throughout this amended complaint instead of the entries in the third column to which they

correspond:

| #  | Abbreviation | Corresponds To |
|----|--------------|----------------|
| 1  | Bronx DA | Bronx District Attorney's office |
| 2  | CCRB | New York City Civilian Complaint Review Board |
| 3  | City Council | New York City Council |
| 4  | DOI | New York City Department of Investigations |
| 5  | DOJ | U.S. Department of Justice |
| 6  | FOIL | Freedom of Information Law |
| 7  | FRCP | Federal Rule of Civil Procedure |
| 8  | IAB | The NYPD's Internal Affairs Bureau |
| 9  | Judge Collins | Bronx Criminal Court Judge Tara Collins. She was assigned to my Bronx criminal case and dismissed and sealed it. |
| 10 | Judge Zimmerman | Bronx Criminal Court Judge Jeffrey Zimmerman who was assigned to my Bronx criminal case. |
| 11 | The Mayor | New York City Mayor Bill de Blasio |
| 12 | SDNY | U.S. Attorney's Office for the Southern District of New York |
| 13 | USMS | U.S. Marshals Service |

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C.

§§1331. This action is brought pursuant to **a)** 42 U.S.C. §§1983, 1985, 1986, 1988 and **b)** the

First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution

2.      My claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and

2202, FRCP Rules 57 and 65, and the general legal and equitable powers of this Court.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because I reside in the Bronx and the

illegal acts and omissions that were committed against me that this complaint concerns occurred

partly in the Bronx.

4.    An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

5.    Consistent with the requirements of New York General Municipal Law § 50-e, I filed a timely Notice of Claim with the New York City Comptroller within 90 days of the accrual of my claims under New York law for all or most of my claims in this case. In instances in which I didn't do so, the City of New York has been timely apprised by me of the facts and circumstances that gave rise to my claims against the City of New York and its personnel that this complaint partly concerns.

6.    My claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

1.    I am, and was at all times relevant to this action, a resident of Bronx County in the State of New York. I am also a U.S. Navy veteran, who swore to defend the U.S. Constitution against all of its enemies indefinitely and without exceptions. I have honored that oath and continue to do so.

2.    Defendant City of New York is a municipal corporation duly incorporated and authorized under the laws of the State of New York pursuant to §431 of its Charter. The City of New York is authorized under the laws of the State of New York to maintain a police department, the NYPD, which is supposed to act as its agent in the area of law-enforcement and for which it and the Mayor are ultimately responsible. The City and the Mayor both assume the risks incidental to the maintenance of a police force and the employment of police officers.

3.    The following defendants in this action were at all times relevant herein officers, employees, and agents of the NYPD and the City of New York:

NYPD Officer Saquoi Harris, (shield #: 2350), NYPD Officer Steven Perez (shield #: 23485), NYPD Officer Liang Lin, NYPD Officer Robert Holmes, NYPD Officer Rodriguez, NYPD Sergeant Frank Amill, NYPD Captain Joseph Tompkins, NYPD Jane

Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7

4.     At all times relevant herein, the defendants who I just identified above were members of the NYPD who upon information and belief were assigned to the NYPD's 48th Precinct.

5.     The defendants in this action who I identify with John Doe and Jane Doe in their names are people whose names that I don't know and were members of the NYPD. Also, they were recorded in audio and video recordings that were recorded on 12/26/17 as they committed illegal acts and omissions against me that this complaint addresses. I received those video recordings as a result of discovery that occurred in my Bronx criminal case. Those defendants appear in and are otherwise heard in the video recordings listed in the table shown next at the elapsed time shown.

| # | Defendant | Audio or Video Recording | Elapsed Time |
|---|-----------|--------------------------|--------------|
| 1 | NYPD John Doe1 12/26/17 | B17664760-2017-12-26_19-19-34.AVI | 2 minutes and 31 seconds |
| 2 | NYPD John Doe2 | B17664760-2017-12-26_19-19-34.AVI | 2 minutes and 31 seconds |
| 3 | NYPD John Doe3 | B17664760-2017-12-26_19-19-34.AVI | 2 minutes and 31 seconds |
| 4 | NYPD John Doe4 | B17664760-2017-12-26_19-19-34.AVI | 2 minutes and 31 seconds |
| 5 | NYPD John Doe5 | B17664760-2017-12-26_19-19-34.AVI | 2 minutes and 31 seconds |
| 6 | NYPD John Doe6 | B17664760-2017-12-26_19-19-34.AVI | 2 minutes and 31 seconds |
| 7 | NYPD John Doe7 | B17664760-2017-12-26_19-19-34.AVI | 2 minutes and 31 seconds |
| 8 | NYPD Jane Doe1 12/26/17 | B17664760-2017-12-26_19-19-34.AVI | 6 minutes and 27 seconds |

6.     In instances in which the faces of the defendants in this action who I identify with John Doe and Jane Doe in their names are shown in video recordings that I have received, they appear in those video recordings that I just identified above in the table shown next at the elapsed times in the video recordings to which I just referred. The John Doe defendants appear from left to

right in numerical order in this table with respect to what appears in the video recording that has

the filename of "B17664760-2017-12-26_19-19-34.AVI" at the elapsed time of 2 minutes and 31

seconds.

| # | Defend-ant | Image | Comments |
|---|---|---|---|
| 1 | NYPD John Doe1 |  | |
| 2 | NYPD John Doe2 |  | |
| 3 | NYPD John Doe3 |  | |

| # | Defend-ant | Image | Comments |
|---|---|---|---|
| 4 | NYPD John Doe4 |  | |
| 5 | NYPD John Doe5 |  | |
| 6 | NYPD John Doe6 |  | |
| 7 | NYPD John Doe7 |  | |

| # | Defend-ant | Image | Comments |
|---|---|---|---|
| 11 | NYPD Jane Doe1 |  | At roughly this time in that video, I told her that I was walking in a public corridor instead of a park when I was illegally stopped by defendants Harris and Perez. In response, she lied to me by claiming that I wasn't supposed to be walking through that area in spite of the fact that I had a legal right to. |

7.      To be clear, I want to add all members of the NYPD as defendants in this case through

the submission of one or more amended complaints who were at the scene of my arrest on

12/26/17 near the intersection of Fairmount Place and Clinton Avenue in the Bronx while I was

being arrested on that date. Claims that I seek to assert against all of them consist of failure to

intervene on my behalf, failure to train and supervise, failure to accord me proper due process,

abuse of process, selective-enforcement, discrimination, assault (for some of them), negligent

and intentional infliction of emotional distress, conspiracy to violate my civil rights, negligence,

and fraud. I don't know most of their identities however. In my Bronx criminal case, I was

provided the video recording that has the filename of "B17664760-2017-12-26_19-19-34.AVI"

that I referenced earlier that was recorded by an unknown member of the NYPD on 12/26/17. I

have made a copy of that video available on the Internet at

https://drive.google.com/file/d/1fbBpLz18cuqvlSzlvvTjT5vk9BzJj1eC/view?usp=sharing. The

next screenshot is from the elapsed time of 2 minutes and 31 seconds in that video and

corresponds to the time of 7:21:36 pm on 12/26/17. Except for defendant Perez who appears on

the far-right in that screenshot, I don't know who the other 7 members of the NYPD are who

appear in that screenshot as all of them had a realistic opportunity to intervene on my behalf to

end the illegal acts and omissions that were then being perpetrated against me by defendants

Harris and Perez as well as other members of the NYPD partly by arresting defendants Harris

and Perez for assaulting me and lying about me on that date.



8.      At all times relevant herein, Defendant NYPD Captain Joseph Tompkins held the rank of

Captain within the NYPD and was assigned to the NYPD's 48th Precinct. In that capacity, he was

among other members of the NYPD who were responsible for making certain that all members

of the NYPD who were assigned to the NYPD's 48th Precinct were properly trained, supervised,

and operated within the bounds of all applicable laws while they were on-duty as members of the

NYPD.

9.      At all times relevant herein, Defendant NYPD Sergeant Frank Amill was a supervising

NYPD officer and was assigned to the NYPD's 48th Precinct. In that capacity, he was also

among other members of the NYPD who were responsible for making certain that all members

of the NYPD who were assigned to the NYPD's 48th Precinct were properly trained, supervised,

and operated within the bounds of all applicable laws while they were on-duty as members of the

NYPD.

10.      At all times relevant herein, Darcel Clark has been the Bronx District Attorney. Upon

information and belief, Ms. Clark was an employee of the City of New York in that capacity.

Also, she was responsible at all times relevant herein as the Bronx District Attorney for making

certain that the district attorney personnel who also worked for her office would **a)** not conduct

malicious prosecutions and **b)** provide all discovery materials to me directly and/or otherwise in

my Bronx criminal case that the Bronx DA was ordered to provide to me and/or my attorneys in

that case by the judges who were assigned to it. Darcel Clark was ultimately responsible for

making certain that the district attorney personnel who worked for her office were properly

trained, supervised, and conducted themselves in full compliance with all applicable laws and

regulations in their capacities as members of the Bronx DA. Immunity that Ms. Clark may

otherwise have doesn't shield her from my claims against her in this case.

11.      At all times relevant herein, Neelam Chhikara and Alana Brady were assistant district

attorneys who worked for the Bronx DAwhile they were involved in frivolously and maliciously

prosecuting me in my Bronx criminal case. Upon information and belief, Ms. Chhikara and Ms.

Brady were employees of the City of New York while they worked for the Bronx DA. Immunity

that Ms. Chhikara and Ms. Brady may otherwise have does not shield them from my claims in

this case.

12.     The defendants in this action who are people violated oaths that they were required to take through the illegal acts and omissions that they committed against me on and after 12/26/17 in relation to my having been illegally arrested on that date and thereafter prosecuted that corresponds to my Bronx criminal case.

13.     According to information on the web site of the New York City Department of Investigations that is available on the Internet at https://www1.nyc.gov/site/doi/report/reporting-obligation.page, all personnel who work for the City of New York have an affirmative obligation to report, directly and without undue delay, to the City of New York through DOI and other ways any and all information that concerns "conduct which they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest:

      a.     By another City officer or employee, which concerns his or her office or employment, or

      b.     By persons dealing with the City, which concerns their dealings with the City.

14.     The following show subparagraphs 2 and 3 within New York City Charter §2604(b) that defendants in this action violated with respect to my claims against them in this action by causing me to be illegally arrested and maliciously prosecuted that benefited them by enabling them to receive extra pay and other compensation and benefits upon information and belief that they otherwise wouldn't have received for the length of time that they spent on activities that pertained to **a)** my illegal arrest and detention between 12/26/17 and 12/27/17 and **b)** the malicious and entirely frivolous prosecution of me that resulted from that:

> 2. No public servant shall engage in any business, transaction or private employment, or have any financial or other private interest, direct or indirect, which is in conflict with the proper discharge of his or her official duties.

> 3. No public servant shall use or attempt to use his or her position as a public servant to obtain any financial gain, contract, license, privilege or other private or personal

advantage, direct or indirect, for the public servant or any person or firm associated with the public servant.

15. The specific oaths that the defendants violated then in regards to me were those that they were required to take upon **a)** joining the NYPD and/or **b)** otherwise working for the City of New York, State of New York, and U.S. government. Those oaths required them to swear or affirm that they would perform their duties as members of the NYPD and/or other personnel of the City of New York, State of New York, and federal U.S. government in accordance with the U.S. Constitution and New York State Constitution as well as other laws, regulations, and rules to the best of their abilities. In regards to this point, the Mayor's press office made a transcript available on the Internet of a swearing-in ceremony for new members of the NYPD that the Mayor presided over on 10/8/15. That transcript is available on the Internet at

https://www1.nyc.gov/office-of-the-mayor/news/702-15/transcript-mayor-de-blasio-delivers-remarks-nypd-swearing-in-ceremony.

16. The next screenshot shows an excerpt from that transcript that reflects how those new members of the NYPD pledged to uphold the U.S. and New York Constitution and to faithfully discharge their duties as members of the NYPD to the best of their abilities after the defendant in this action who are members of the NYPD most likely did the same before they committed illegal acts and omissions against me that this action concerns. Hindsight therefore confirms that they lied in the oaths that they took upon joining the NYPD to become part of a criminal mob as liars and con artists instead of joining the ranks of actual law-enforcement.

> **Mayor:** I do hereby pledge – I'm sorry, I should say repeat after me – I do hereby pledge and declare –
>
> **Recruits:** I do hereby pledge and declare –
>
> **Mayor:** – to uphold the Constitution of the United States –
>
> **Recruits:** – to uphold the Constitution of the United States –
>
> **Mayor:** – and the Constitution of the State of New York –
>
> **Recruits:** – and the Constitution of the State of New York –
>
> **Mayor:** – and faithfully discharge my duties –
>
> **Recruits:** – and faithfully discharge my duties –
>
> **Mayor:** – as a New York City Police Officer –
>
> **Recruits:** – as a New York City Police Officer –
>
> **Mayor:** – to the best of my ability –
>
> **Recruits:** – to the best of my ability –
>
> **Mayor:** – so help me God.
>
> **Recruits:** – so help me God.

17.     In a similar vein, other personnel of the City of New York are required upon working for the City of New York by New York State Civil Service Law §62 to take and file an oath or affirmation in which they pledge and declare that they will support the U.S. and New York State Constitution and faithfully discharge the duties of their jobs with the City of New York to the best of their abilities. The terms of New York State Civil Service Law §62 are shown on the New York State Senate's web site at https://www.nysenate.gov/legislation/laws/CVS/62. The following are two relevant excerpts from that law:

    a.    "Every person employed by the state or any of its civil divisions, except an employee in the labor class, before he shall be entitled to enter upon the discharge of any of his duties, shall take and file an oath or affirmation in the form and language prescribed by the constitution for executive, legislative and judicial officers, which may be administered by any officer authorized to take the acknowledgment of the execution of a deed of real property, or by an officer in whose office the oath is required to be filed. In lieu of such oath administered by an officer, an employee may comply with the requirements of this section by

subscribing and filing the following statement: **"I do hereby pledge and declare that I will support the constitution of the United States, and the constitution of the state of New York, and that I will faithfully discharge the duties of the position of ............, according to the best of my ability."** Such oath or statement shall be required only upon original appointment or upon a new appointment following an interruption of continuous service, and shall not be required upon promotion, demotion, transfer, or other change of title during the continued service of the employee, or upon the reinstatement pursuant to law or rules of an employee whose services have been terminated and whose last executed oath or statement is on file."

(boldface formatting added for emphasis)

b.    "The refusal or wilful failure of such employee to take and file such oath or subscribe and file such statement shall terminate his employment until such oath shall be taken and filed or statement subscribed and filed as herein provided."

18.    On a closely related note, the following shows the terms of New York City Charter Section 435(a) that address the legal duties that all members of the NYPD have and underscores the fact that the defendants in this action who were members of the NYPD on 12/26/17 and thereafter committed illegal acts and omissions against me in relation to my claims in this case by flagrantly violating and disregarding their legal duties as members of the NYPD:

"**The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public** streets, **sidewalks**, parks and places; **protect the rights of persons** and property, **guard the public health**, **preserve order at** elections and **all public meetings and assemblages**; subject to the provisions of law and the rules and regulations of the commissioner of traffic,* regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health; **remove all nuisances in the public** streets, parks and **places**; arrest all street mendicants and beggars; provide proper police attendance at fires; inspect and observe all places of public amusement, all places of business having excise or other licenses to carry on any business; **enforce and prevent the violation of all laws and ordinances in force in the city**; and for these purposes **to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses**.

(boldface formatting added for emphasis)

19.    By committing the illegal acts and omissions against me that my claims in this action

concern, the defendants who did so and were then personnel of the City of New York violated

New York City Charter §1116 that requires them to be promptly fired and prohibited from

working for the City of New York again.

20.     The individual defendants are being sued herein in their individual and official capacities.

21.     At all times relevant herein, the individual defendants who were employees of the NYPD

and/or City of New York were acting under color of state law in the course and scope of their

duties and functions as agents, servants, employees and officers of the NYPD and/or City of

New York. They were acting for and on behalf of the NYPD and one another at all times

relevant herein. While doing so, the defendants in this action who are members of the NYPD did

so with the power and authority vested in them as officers, agents and employees of the NYPD

and incidental to the lawful pursuit of their duties as officers, employees and agents of the

NYPD.

22.     At all times relevant herein, the individual defendants who were employees of the Bronx

DA and/or City of New York were acting under color of law in the course and scope of their

duties and functions as agents, servants, employees and officers of the Bronx DA and/or City of

New York. They were acting for and on behalf of the Bronx DA and one another at all times

relevant herein. While doing so, the defendants in this action who are members of the Bronx DA

did so with the power and authority vested in them as officers, agents and employees of the

Bronx DA and incidental to the lawful pursuit of their duties as officers, employees and agents of

the Bronx DA.

23.     The individual defendants' acts hereafter complained of were carried out intentionally,

recklessly, and oppressively with malice and egregious, callous, and wanton disregard of

plaintiff's rights.

24.     At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## BACKGROUND FACTS

1.     I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

2.     I wanted to exercise my legal right on 12/26/17 pursuant to _People v Howard_, 50 NY2d583 (1980) to be left alone completely by defendants Saquoi Harris and Steven Perez by not having any interaction with them as they initially approached me while we walked in opposite directions in a public corridor that then existed between **a)** Prospect Avenue and Clinton Avenue in the Bronx and **b)** two sections of Fairmount Place in the Bronx that are split by that public corridor that then existed between Prospect Playground and a school that is named Public School 211 that is located at 1919 Prospect Avenue in the Bronx while there was not even a single "No Trespassing" sign near that corridor that was applicable to people who sought to lawfully exercise their First Amendment and Fourteenth Amendment rights to walk through that public corridor whenever they sought to. To be perfectly clear, I was never in the park on 12/26/17 that was Prospect Playground and I was never on school property on 12/26/17 that was next to that public corridor.

## STATEMENT OF FACTS

3.     I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

4.     The first exhibit within the annexed **Exhibit A** shows the first page of the Certificate of Disposition that I received on 2/3/20 fro the Bronx Criminal Court that confirms that Judge

Collins dismissed and sealed my Bronx criminal case on 1/23/20. I have redacted what I regard as confidential and otherwise sensitive information about me in that screenshot.

5.      There was a silver lining about my having experienced the additional entirely frivolous and retaliatory criminal prosecution that corresponds to my ass-kicking of the USMS, CSOs & SDNY. That silver lining rests with the fact that the USMS, SDNY, and FPS were among federal government agencies whose personnel conducted extensive research about me. Information that they obtained about me through such research was provided to me through my attorneys in my ass-kicking of the USMS, CSOs & SDNY. Some of that research material that was provided to me in that case included information that the NYPD maintained about me and my claims in this case. The next 3 screenshots are from the same page in a PDF file that was provided to me in that case after research by one of those federal government agencies uncovered critically significant information about me that clearly indicates that charges of criminal trespassing and assaulting a police officer that were filed against me on 12/26/17 by the NYPD were voided before 6/23/18 and I thereafter continued to be illegally prosecuted in my Bronx criminal case.

 

# TOWAKI KOMATSU
## RTCC SUMMARY

| ARRESTS | | | | |
|---|---|---|---|---|
| Date | Law Code | Sealed or Voided | Precinct | Arrest Number (Includes Check Digit) |
| 12/26/2017 | ASLT:POLICE OFF/FIREMAN/EMT RESISTING ARREST OBSTRUCT GOVERNMENTL ADMIN-2ND CRIMINAL TRESPASS-3RD | Voided | 048 | B17664729-Z |

| Run On: Jun 22, 2018 12:06:57 PM | -8- | REAL TIME CRIME CENTER |
|---|---|---|
| Run By: ███████████ | | Case #: 998 |

6.      The next screenshots are enlargements of parts of the preceding 2 screenshots to allow for better comprehension of the information in them and the date and time when research was

conducted by federal government agency personnel that uncovered that information about me. I didn't redact anything in these screenshots.

| | ARRESTS | |
|---|---|---|
| Date | Law Code | Sealed or Voided |
| 12/26/2017 | ASLT:POLICE OFF/FIREMAN/EMT<br>RESISTING ARREST<br>OBSTRUCT GOVERNMENTL ADMIN-2ND<br>CRIMINAL TRESPASS-3RD | Voided |

Run On: Jun 22, 2018 12:06:57 PM

Run By: ███████████████

7.     A key question that is naturally raised by the information in the preceding screenshots is about why I continued to be illegally prosecuted in my Bronx criminal case for more than 1.5 years after charges of assaulting a police officer and criminal trespassing were voided. In short, the voiding of the criminal trespassing charge that was filed against me caused mootness to apply because it decisively established that **a)** Defendants Saquoi Harris and Steven Perez had absolutely no legal grounds whatsoever to have stopped me on 12/26/17 and b) all hostilities that occurred thereafter between us and between me and other members of the NYPD thereafter on 12/26/17 were ultimately strictly the fault of Defendants Saquoi Harris and Steven Perez for having illegally stopped me as I lawfully conducted myself in accordance with my constitutional rights while walking through a public corridor near where I reside. The following excerpt from *Wright v. Musanti*, No. 14-cv-8976 (KBF) (S.D.N.Y. Jan. 20, 2017) sufficiently reinforces my point that **Defendants Saquoi Harris and Steven Perez** are to blame for all hostilities that occurred between me and members of the NYPD on 12/26/17 after 6 pm that involved Defendants Saquoi Harris and Steven Perez because they were they initial aggressors against me:

> "Under these circumstances, defendant's kick clearly altered the tenor of the parties' interaction, shifting the encounter from an ordinary, nonaggressive interaction between two pedestrians to something more akin to a street brawl. As a result, defendant served as the initial aggressor at the outset of the encounter, rendering her liable to plaintiff for all ensuing assaults and batteries"

8.     The findings in _Wright v. Musanti_, No. 14-cv-8976 (KBF) (S.D.N.Y. Jan. 20, 2017)

further make clear that offensive physical contact constitutes assault under New York State law.\

9.     Although the following excerpt from _Snyder v. Phelps_, 562 U.S. 443, 131 S. Ct. 1207,

179 L. Ed. 2d 172 (2011) confirms that members of the NYPD were prohibited from committing

illegal acts and omissions against me on 12/26/17 and thereafter in response to lawful expression

that I engaged in against them and their colleague, Defendants Harris and Perez certainly

subjected me to First Amendment retaliation by illegally causing me to be falsely arrested on

12/26/17 and thereafter maliciously and pretextually prosecuted as a direct result of that illegal

12/26/17 arrest that was in response to entirely valid criticism that I lawfully expressed against

Defendants Harris and Perez partly for illegally stopping me, illegally initiating physical contact

with me, illegally assaulting me, and illegally obstructing my ability to see Mr. Harris' NYPD

shield that all occurred on 12/26/17 before I was officially arrested by them:

> "Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate."

10.    The following excerpt from _Felix de Santana v. Velez_, 956 F.2d 16 (1st Cir. 1992)

addresses First Amendment retaliation that involves a criminal prosecution that directly relates to

my claims in this case:

> "We find that defendants' conduct as alleged in the complaint coupled with defendants' previous attempt to violate plaintiff's First Amendment rights amounts to a _prima facie_ case of conduct so egregious as to "substantively, `shock the conscience.'" _Morales,_ 906 F.2d at 784 (citing _Barnier v. Szentmiklosi,_ 810 F.2d 594, 599 (6th Cir.1987)). To cause the arrest of

an innocent person and her prosecution when there is no ground for believing she committed a crime is outrageous and under the circumstances as alleged in the complaint, it is actionable under Section 1983. *See Goodwin v. Metts,* 885 F.2d 157, 163 (4th Cir.1989) ("Whether a criminal defendant is incarcerated is not decisive in determining if he has suffered an abridgment of constitutional rights"); *Hand v. Gary,* 838 F.2d 1420, 1424 (5th Cir.1988) ("There is a constitutional right to be free of `bad faith prosecution'"). The complaint alleges that plaintiff suffered financial distress, the loss of her job and reputation and incalculable public humiliation as a result of defendants' actions. We emphasize that this case presents exceptional and unusual circumstances which justify, if barely so, the finding that plaintiff has stated a *prima facie* substantive due process claim. A reasonable juror may conclude at trial that plaintiff's constitutional rights have not been violated."

11.     On 12/26/17, I was lawfully conducting myself while walking at roughly 6:40 pm in a

public corridor that then existed between **a)** Prospect Playground in the Bronx that is located

near the intersection of Prospect Avenue and Fairmount Place and **b)** a school in the direction of

Clinton Avenue when I encountered Defendants Harris and Perez as they walked in the opposite

direction. As I sought to ignore them and walk past them, they called out to me and I deliberately

ignored them in accordance with my legal rights and continued to walk past them while I was

then at a point that was past the midway point in that corridor.  Strictly in response to the fact

that I ignored them and continued to walk away from them, Defendant Harris criminally

assaulted me by grabbing one of my arms. That justifiably enraged me and I immediately loudly

ordered Mr. Harris to get his hands off of me. However, he refused. As a result, I immediately

engaged in legal self-defense with minimal force mainly by yanking my arm away from him as I

may have also legally pushed him away during the physical struggle that naturally ensued

because he instigated that conflict between us. As that occurred Mr. Perez also grabbed my arm

in that public corridor and I yanked my arm away from him. Moreover, Mr. Harris also illegally

kicked me while we were in that corridor to try to trip me. When I told Mr. Perez that Mr. Harris

had just kicked me, he lied by denying that had occurred. I believe that he lied about that because

I believe that he was then equipped with a NYPD body-camera that was then recording both an

audio and video recording in that public corridor and he wanted to immediately try to refute my assertion about Mr. Harris having just kicked me. At that time, Defendant Harris was equipped with a NYPD body-camera and was required to have recorded the entirety of his interactions with me that began in that public corridor.

12.     While we were in that corridor, Mr. Harris and Mr. Perez both lied by fraudulently claiming that where I stood in that corridor was part of Prospect Playground and was also part of school property. That park was then a fenced-in area that I was never inside of on 12/26/17. Also, a vertical partition that is similar to a gate and a fence then existed that stood in an adjacent way to the length of that public corridor. That partition then separated school property from that public corridor in which I stood. When I immediately ordered Mr. Harris and Mr. Perez to tell me why they illegally stopped me, they claimed that I was illegally trespassing and that they had been directed to look for a suspect that I believe they described as a drug dealer or robbery suspect. They also then claimed that the NYPD had received complaints about people walking in the public corridor where I met them. When I met them, I wasn't conducted myself in any way to arouse any suspicion about me. The clothing that I then wore was a jacket, sweatshirt, shirt and sweatpants. I wasn't carrying any bag nor wearing any backpack then. Items that I then were carrying and otherwise had on me in my pockets included a wallet, a small pouch for change, headphones, cellphones, headphones, and keys. There was nothing illegal nor threatening about any of those items. Also, when I met them in that corridor, I believe that I then had a cold and I was walking to a Rite-Aid store that is located less than one mile from where I met them to buy medicine for that cold.

13.     The end of that corridor that is located near the intersection of Clinton Avenue and Fairmount Place has a metal gate on its right side that was consistently fastened to a fence

located next to it with a rusted metal wire. It was fastened that way immediately after 12/26/17

and I have reason to believe that it was consistently fastened that way on and prior to 12/26/17. It

continued to be consistently fastened that way long after 12/26/17. Also, there never were any

"no trespassing signs" posted on 12/26/17 to direct people to keep out of that public corridor near

that corridor. Prior to the commencement of a reconstruction project affecting Prospect

Playground that began long after 12/26/17 and 12/26/17, no "no trespassing" signs were posted

near that corridor to direct people to keep out of that public corridor. These facts and

circumstances sufficiently confirm that Defendants Harris and Perez subjected me to an illegal

stop of my ability and right to freely move about on 12/26/17 while I was in that public corridor.

By doing so, Defendants Harris and Perez flagrantly violated my rights pursuant to the First

Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment without any

immunity.

14.    As I continued to interact with Mr. Harris and Mr. Perez in that corridor, I loudly and

clearly ordered them to leave me alone. As I lawfully ordered those thugs in that way, I told them

that I didn't trust the NYPD, it was my view that members of the NYPD are corrupt, I previously

had adversarial encounters with the NYPD about which I reported entirely valid complaints, and

that I was then involved in litigation activities against members of the NYPD. As Mr. Harris and

Mr. Perez thereafter made it clear that they were just going to issue me a verbal warning about

being in that corridor as they fraudulently claimed that I was in a park and on school property, I

ordered both Mr. Harris and Mr. Perez to show me their NYPD shields to enable me to see with

my own eyes the information that was shown on their NYPD shields about their last names and

NYPD shield numbers. In response, Mr. Perez complied with that. However, Mr. Harris didn't.

He instead twisted his body away from me to try to prevent me from being able to view his

NYPD shield. As he did so, I told him in that corridor that proposed legislation then existed in New York City that concerned what was then known as the Right-To-Know Act that would require members of the NYPD to be more transparent with the public about how they operated. In response, he correctly told me that that proposed legislation hadn't yet been enacted as law. However, I still had a First Amendment right to clearly see his NYPD shield to record his last name and NYPD shield number. Soon thereafter, Mr. Harris and Mr. Perez exited that corridor by exiting it near the intersection of Prospect Avenue and Fairmount Place before they then turned to their right and walked along a sidewalk at an abnormally brisk pace. As they exited that public corridor where I met them, I exercised my legal right to follow them as I continued to try to ultimately be in a position from which I would have a vantage point that would enable me to clearly view Mr. Harris' NYPD shield firsthand. Both while we were in that corridor and after we exited it, I clearly apprised Mr. Harris and Mr. Perez that it was my intent to get in them in big trouble by reporting entirely valid complaints against them for having illegally stopped me, seized me, assaulted me, harassed me, and lied about me while we were in that corridor. All of that by me was protected First Amendment activity. My remarks to them on 12/26/17 about my intent to get them in big trouble that way and arguably crude and offensive speech that I likely expressed to them then were entirely legal views of mine about them that I expressed in the context of reporting entirely valid complaints about their illegal acts against me. This point is confirmed by findings in in _Matal v. Tam_, 137 S. Ct. 1744, 582 U.S., 198 L. Ed. 2d 366 (2017), _Barboza v. D'Agata,_ 151 F. Supp. 3d 363 (S.D.N.Y. 2015), and _Doe v. City of New York_, No. 18-cv-670 (ARR)(JO) (E.D.N.Y. Jan. 9, 2020).

15.     As I followed Mr. Harris and Mr. Perez out of that public corridor and on that public sidewalk along Prospect Avenue towards East 176th Street I walked behind them. This means

that I didn't interfere with their ability to perform their official duties. When they turned to the right at the intersection of Prospect Avenue and East 176th Street, I did too in a manner that is similar to how I am constantly illegally stalked by federal court security officers whenever I visit federal courthouses in New York City. However, my actions on 12/26/17 by following Mr. Harris and Mr. Perez were totally legal in contrast as I shadowed their movements and they tried to escape liability for having illegally stopped, seized, assaulted, harassed, and lied to and about me in the public corridor where I first met them.

16.     As I followed Mr. Harris and Mr. Perez on those sidewalks, I never once conducted myself in any way that was erratic, threatening to anyone, disorderly, and suggested that I posed a danger to anyone. I was instead justifiably angry at Mr. Harris and Mr. Perez about their illegal acts against me. Their illegal acts against me occurred just 1 day after I had a really lousy Christmas and that circumstance led me to be even angrier at them than I likely would otherwise have been. The fact that their illegal acts against me occurred just 6 days after the Mayor harassed me on 12/20/17 at the end of the public town hall meeting that he conducted in Brooklyn by illegally telling me to stop coming to public meetings that were partly conducted by him in flagrant violation of my constitutional rights and other laws as I recorded his remarks then on audio and 12 days after I testified against the NYPD on 12/14/17 during a City Council public hearing that was conducted by the useless New York City Councilman Corey Johnson and equally useless New York City Councilwoman Vanessa Gibson for the City Council's useless Committee on Public Safety that is responsible for providing proper oversight of how the NYPD operates also made me extremely angry. On a related note, what follows shows an e-mail message that I sent on 12/26/17 at 4:59 pm to an attorney named John Bart while he then worked for an organization named Mobilization for Justice, Inc. When I sent that e-mail message to him,

I continued to seek to have his organization provide me pro-bono legal representation for legal matters that included violations of my constitutional rights by members of the NYPD in 2017 concerning my efforts to lawfully attend public forums and otherwise exercise my rights in public forums that include public sidewalks. I sent that e-mail message to him after I was referred to his organization by HRA to see if his organization would provide me pro-bono legal representation. HRA helps to fund his organization's operations. This means that legal matters were very much on my mind when I met Defendants Harris and Perez on 12/26/17.

> **From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
> **Subject:** Re: Closing your file at Mobilization for Justice
> **Date:** December 26, 2017 at 4:59:26 PM EST
> **To:** John Bart <jbart@mfjlegal.org>
>
> Since I don't have the entire file you requested, filed a motion back in August or September with Judge Bannon to unseal the case, and lack the financial resources to photocopy the entire file, I've done all I can do to try to accommodate your request for that entire file.
>
> You also never explained why your team won't put others through the same hassles and sacrifices I've undergone with publicly-available resources to discover how the courts operate as well as applicable law and court court decisions when they seek legal representation from your organization.
>
> At this juncture, I don't see any other option than to move in federal court for the type of restraining order I previously discussed.

17.    As I followed Mr. Harris and Mr. Perez on 12/26/17 while we walked on a sidewalk along Prospect Avenue toward East 176th Street, I observed Mr. Harris engage in behavior shortly before 7:17 pm that strongly suggested that he was engaging in a radio communication with someone by talking into what was likely a microphone that may have been located near the collar of the uniform that he then wore. It's objectively reasonable to infer from what the totality of the circumstances then were involving Mr. Harris, Mr. Perez, and I that such communications were partly about me. As a result of my Bronx criminal case, I received an audio recording from

the Bronx DA through my attorney that has the filename of "Komatsu-Phone-Interview-Sargeant Amill.wav" Upon information and belief, that audio recording is of a telephone conversation between Defendant Amill and a female member of the NYPD about Mr. Harris, Mr. Perez, and I. At the elapsed time of 4 minutes and 35 seconds in that audio recording, a male voice is heard that is objectively reasonable to conclude is that of Defendant Amill as that person said the following to describe a decision that was made by Mr. Harris and Mr. Perez about how they were going to deal with me as I followed them on a public sidewalk:

" You know what? Let's 'E'…I'm gonna EDP this guy."

18.     At the elapsed time of 4:32 pm in that audio recording, the same person who made the preceding remark in it described how I behaved on 12/26/17 as I followed Mr. Harris and Mr. Perez on public sidewalks as "harassing" them. He didn't state nor otherwise suggest that my behavior towards them was illegal partly because it wasn't. Also, he fraudulently omitted the material fact in that conversation that Mr. Harris and Mr. Perez instigated the confrontation between us on 12/26/17 while committing illegal acts against me in the public corridor where we met and that Mr. Harris was engaging in obstruction of justice by illegally interfering with my ability and right to see his NYPD shield firsthand. In short, Mr. Harris and Mr. Perez used a fraudulent pretext to resume committing illegal acts against me as I followed them on public sidewalks on 12/26/17 by fraudulently claiming that I was an emotionally-disturbed person ("EDP") who they needed to seize for public safety reasons. Between the 3 of us, the only people who were clearly emotionally disturbed in a manner that endangered public safety were Mr. Harris and Mr. Perez because their intolerance about the fact that I was justifiably and legally criticizing them while I legally followed them on public sidewalks is what drove them to illegally retaliate against my protected First Amendment behavior towards them by fraudulently

claiming that I was an emotionally-disturbed person to subject me to a naked abuse of process

and fraudulent pretext to resume committing illegal acts against me by illegally seizing,

assaulting, and harassing me yet again on a public sidewalk. Through the discovery process in

my Bronx criminal case, I received an audio recording that has the filename of

"201710666_Audio_201710666_20180214_0856_DM (1).wav" that I have made available on

the Internet at https://drive.google.com/open?id=10hdOt5VqM-RsiOeZhS3ohomEYzFXirzx.

That audio recording is of what appears to have been radio communications that members of the

NYPD engaged in with one another on 12/26/17. Those communications were partly about me

and my having been illegally arrested on that date by defendants Harris, Perez, and other

members of the NYPD in relation to the interactions that I had with defendants Harris and Perez

on that date. At the elapsed time of 8 minutes and 37 seconds in that audio recording, a male who

clearly seems to have then been a member of the NYPD is clearly heard as he made the

following remark that appears to have been about me shortly after remarks are heard in that

audio recording about something taking place at near the intersection of East 176th Street and

Clinton Avenue in the Bronx that was near where defendants Harris and Perez tried to illegally

seize me for a second time after having illegally seized me in the public corridor where we first

met:

> "He's not EDP."

19.    Concerning what I just discussed, the following excerpt from *Frain v. Baron*, 307 F.

Supp. 27 (E.D.N.Y. 1969) cites a controlling U.S. Supreme Court decision and confirms that no

member of the NYPD had any objectively reasonable justification nor any immunity for having

stopped, made physical contact with me, detained, and arrested me on 12/26/17:

> "Fear of disorder, which the City cites to justify its policy, has been ruled out as a ground
> for limiting peaceful exercise of First Amendment rights. Edwards v. South Carolina, 372

U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963)."

20.     The next screenshot shows a screenshot that I took from the Google Earth software

program that shows an aerial view of the area where I interacted with and otherwise followed

defendants Harris and Perez prior to being officially and illegally arrested by the NYPD on

12/26/17.  I have added lines with arrows on top of that screenshot to indicate where I first met

defendants Harris and Perez before I then followed them and was illegally arrested by the NYPD

in an official way. The following applies to the what the arrows shown in that screenshot signify:

   a.     The first arrow that appears on the right and points down is over the public

          corridor where I first met defendants Harris and Perez. The top of that line

          signifiies roughly how far I was able to walk in that corridor on 12/26/17 towards

          Clinton Avenue before defendants Harris and Perez illegally began to criminally

          assault me in that corridor initially by grabbing my arms. Although a sign was

          posted on 12/26/17 and thereafter in an area that is near the bottom of that arrow

          and near the public corridor where I met defenants Harris and Perez, that sign was

          posted there for drivers to inform them that the area near that public corridor was

          generally a no parking area. The specifc area where that sign was posted is an area

          where people who seem to work for a nearby school park their cars.

   b.     The bottom arrow that appears on the right and points to the left is positoned over

          the public sidewalk that is parallel to Prospect Avenue.

   c.     The arrow that appears on the left and points up is over the public sidewalk that is

          parallel to East 176th Street. where I first met defendants Harris and Perez. At a

          point that is roughly halfway along that sidewalk, I added an additional arrow that

          is diagonal and points down and to the right to indicate the approximate location

where a video recording that was recorded on 12/26/17 by the NYPD body-camera that defendant Harris was wearing recorded audio and video that was provded to me as a result of discovery in my Bronx criminal case. This is extremely significant because though defendants Harris and Perez were absolutely required to record audio and video recordings with NYPD body-cameras that they were equipped with on 12/26/17 of the entirety of their interactions with me on that date before I was officially and illegally arrested by the NYPD in relation to my interactions with defendants Harris and Perez, no audio and video recording was provided to me in my Bronx criminal case that was recorded on 12/26/17 prior to that audio and video recording that was recorded by the NYPD body-camera that was worn by defendant Harris as it recorded our interactions beginning on East 176th Street. This means that I was illegally not provided audio and video recordings that were required to have been recorded by defendants Harris and Perez of roughly the first 50% of the interactions that I had with them before I was illegally arrested officially by the NYPD on 12/26/17 near the intersection of Clinton Avenue and Fairmount Place in the Bronx. I firmly believe that such audio and video recordings were actually recorded of that first 50%, but were thereafter illegally withheld from me by members of the NYPD and destroyed to engage in an illegal cover-up. It may be possible to confirm such a cover-up by a dilgent examination of audit trail records that have been in the possession of the NYPD and correspond to the use of NYPD body-cameras. By not enabling me to be provided audio and video recordings from Mr. Harris' NYPD body-camera for the entire time that he and Defendant Perez were in my

presence on 12/26/17 from the moment that I initially encountered them, Mr.
Harris, the City of New York, and other unknown defendants are liable for
violating my First Amendment and Fourteenth Amendment rights in relation to
my equal protection, due process, and liberty rights that *Regents of State Colleges
v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) confirms includes
the right to **a)** "acquire useful knowledge" that includes audio and video
recordings from NYPD body-cameras, **b)** engage in the common occupations of
life while efforts to do so were materially prejudiced by my having been illegally
arrested on 12/26/17 and maliciously prosecuted due to that, and **c)** pursue
happiness in an orderly manner as free men.

d.      The arrow that appears on the top, points to the right, and is parallel to Clinton
Avenue is positioned over the public sidewalk where I tried to exercise my legal
right to walk away from defendants Harris and Perez near where that arrow
begins on the left side of that arrow before defendant Harris criminally assaulted
me by illegally seizing one of my arms yet again that prompted me to engage in
legal self-defense against him and defendant Perez as Mr. Perez joined Mr. Harris
in illegally assaulting me by seizing me. Before I began to walk away in that area,
I'm heard making remarks to Defendant Perez about the fact that I hadn't seen
any "no trespassing" signs posted in the area where I met him and defendant
Harris as I walked in a public corridor. In response, Mr. Perez is heard in that
recording as he lied to me by fraudulently claiming that I wasn't supposed to be
walking in that corridor. The end of that arrow on its right side signifies the area
where I continued to be illegally assaulted by additional members of the NYPD

after they arrived in that on Clinton Avenue and took me to the ground while

trying to illegally arrest me instead of properly doing their job to objectively and

diligently ascertain what the actual facts were that applied to my interactions with

defendants Harris and Perez that prompted those additional members of the

NYPD to come to that area. By not bothering to objectively and diligently **a)**

ascertain that information and **b)** intervene on my behalf against defendants

Harris and Perez to uphold my constitutonal rights that they had been violating

and were continuing to violate in the immediate presence of those additional

members of the NYPD that arrived to that scene on Clinton Avenue between East

176th Street and Fairmount Place, they violated the Fourteenth Amendment

affirmative legal duty as law-enforcement personnel to intervene on my behalf.

By joining in the assault against me on 12/26/17 on Clinton Avenue and

otherwise illegally arresting me there, all members of the NYPD who were

involved in that through their acts and omissions while they were at that scene on

12/26/17 violated both their Fourteenth Amendment affirmative legal duty as law-

enforcement personnel to intervene on my behalf to uphold my constitutional

right to **a)** not be falsely arrested then by members of the NYPD, **b)** not be

illegally seized and detained then, **c)** not be illegally assaulted by members of the

NYPD, **d)** granted my First Amendment right to petition them for redress and

have that petitition properly heard by them then and there and fully resolved in

accordance with my Fifth Amendment and Fourteenth Amendment due process

and equal protection rights.  Moreover, by not intervening on my behalf then, the

members of the NYPD who didn't do so also violated 42 U.S.C. §1985 and 42

U.S.C. §1986.



21.    The following is a link to a copy of a video recording that I have made available on the Internet, had the original filename of "201710666_Video_201710666_20180116_1453_DM (1).AVI", and corresponds to the NYPD body-camera video recording that is the earliest one that was both **a)** recorded on 12/26/17 in relation to my interactions with defendants Harris and Perez and **b)** provided to me in my Bronx criminal case:

https://drive.google.com/open?id=1UXzQlR4W33DQpS1IEE4XdkyrNyFfr4TC

22.    That video recording was recorded by a NYPD body-camera that was worn by defendant

Harris and begins at 7:17 pm on 12/26/17. That video recording started to be recorded in a location along East 176th Street between Prospect Avenue and Clinton Avenue as defendant Perez, defendant Harris, and I walked in the direction of Clinton Avenue. When NYPD body-cameras begin to record audio and video recordings, the audio segment of those recordings begins to be recorded 30 seconds that recording starts. The audio recording in that video starts at the time of 7:17:33 seconds on 12/26/17 that corresponds to the elapsed time of 29 seconds in that video. Defendant Harris' voice is heard at that point in that video as he engaged in a radio communication.

23.    At the elapsed time of 31 seconds in that video, I'm heard making a remark to defendant Perez about former U.S. District Court Judge Jack Weinstein as I was then referring to the NYPD's illegal practice that is known as "Testilying" that Judge Weinstein sought to investigate in the case of _Cordero v. City of New York_, No. 15-cv-3436 (JBW) (E.D.N.Y. Feb. 23, 2018) that I attended in February of 2017. "Testilying" refers to the illegal practice by members of the NYPD of making false official statements. Before I learned that he is a whistleblower news censor in journalism in regards to me, someone named Joseph Goldstein wrote a news article that is entitled "Brooklyn Judge Seeks to Examine the Prevalence of Police Lying" that the New York Times published on the Internet on 10/17/17 at https://www.nytimes.com/2017/10/17/nyregion/brooklyn-judge-police-perjury-nypd.html that addressed the NYPD's practice of testilying and Judge Weinstein's efforts to investigate that in _Cordero v. City of New York_, No. 15-cv-3436 (JBW)(CLP)(E.D.N.Y. Feb. 23, 2018). I made that remark to Mr. Perez then about testilying because I knew that he and defendants Harris were making fraudulent claims about me by having lied by claiming that I had been in Prospect Playground on 12/26/17 and that I had otherwise been on school property when we first met.

Basically, I was then pointing out to defendant Perez the level of scrutiny that would likely be paid to their lies about and against me on 12/26/17 when it came time for us to see each other again in court in response to an entirely valid lawsuit that I would commence against them for their illegal acts against me on 12/26/17. At the time of 7:17:53 pm in that video recording that was recorded by the NYPD body-camera that defendant Harris was wearing on 12/26/17 that corresponds to the elapsed time of 50 seconds, I'm shown and heard angrily using profanity while lawfully telling defendant Perez that people walked through the public corridor every day where he and defendant Harris first met me on that date as they illegally stopped, seized, assaulted, stalked, and harassed me in that corridor as I was lawfully conducting myself in it. At the time of 7:18:03 pm in that video recording that corresponds to the elapsed time of 59 seconds, Defendant Perez is heard lying to me by fraudulently claiming that I wasn't supposed to be walking through the public corridor where he and I first met at the time when he and I first met. He made such remarks at that point in that video as he fraudulently didn't acknowledge the material fact that there weren't any "no trespassing" signs and other signs of that nature that were then posted that applied to the public corridor where he and I first met. He also fraudulently didn't acknowledge the material fact that the exit for that public corridor near the intersection of Clinton Avenue and Fairmount Place was being kept open by a rusted metal wire that fastened a gate to a fence.

24.     At roughly the elapsed time of 1 minute and 4 seconds from the beginning of that video, defendant Harris criminally assaulted me by illegally initiating physical contact with me while I was lawfully still standing on that public sidewalk that runs along Clinton Avenue and was otherwise conducting myself in a lawful manner. At that point in time, he assaulted me by grabbing at one of my arms that constituted physical contact with me that I immediately regarded

as being offensive. His assault against me then caused me to immediately engage in legal self-defense against him to get him away from me as I ordered him to leave me alone and get his hands off of me as he ignored my orders and instead continued to illegally assault me while further threatening me by telling me that I was going to a hospital at a time when he and defendant Perez were armed with guns and were behaving as criminals in a manner that was comparable to ordinary street muggers while dressed in law-enforcement costumes. As defendant Harris persisted in assaulting me with defendant Perez by illegally grabbing me, I told both of them very clearly that I was engaging in self-defense and loudly shouted "harassment" to try to alert members of the community nearby that members of the NYPD's criminal mob were yet again assaulting innocent people in New York City as I sought unsuccessfully to attract the attention of eyewitnesses from nearby buildings. In hindsight, it's likely that the reason why defendants Harris and Perez exited the public corridor in the direction that they did so after meeting me and walked toward Clinton Avenue by circling around Prospect Playground was to try to minimize attention by the surrounding community to them and their illegal acts against me. This is more likely than not by virtue of the fact that there really weren't any residential buildings along that route that they walked as they exited that public corridor.

25.     At 7:19:15 pm on 12/26/17 that corresponds to the roughly the elapsed time of 2 minutes and 11 seconds from the beginning of that video that was recorded by defendant Harris' NYPD body-camera, I'm clearly heard telling defendants Harris and Perez while they were illegally arresting me, seizing me, and detaining me while I was down on the ground in response to their criminal assaults against me that I needed to instead deal with litigation in which I was then involved.

26.     At 7:19:20 pm on 12/26/17 that corresponds to the roughly the elapsed time of 2 minutes

and 17 seconds in that video, I'm clearly heard ordering defendants Harris and Perez to immediately arrange to have a NYPD commanding officer to come to where we then were to properly straighten things out. Throughout that ordeal, I repeatedly ordered defendant Harris, Perez, and all other members of the NYPD who came to that scene on Clinton Avenue in the Bronx to "get the fuck off of me" as no one obeyed my orders in flagrant violation of my constitutional rights. No probable cause nor reasonable suspicion existed whatsoever to objectively justify the acts and omissions that members of the NYPD committed against me on 12/26/17 in relation to my interactions with defendants Harris and Perez.

27.    At 7:20:12 pm on 12/26/17 that corresponds to the roughly the elapsed time of 3 minutes and 8 seconds in that video, I'm clearly heard stating to defendants Harris and Perez that I wasn't doing anything wrong to justify the illegal acts and omissions that were being perpetrated by them and other members of the NYPD on that date and at that location.

28.    At roughly 7:20:55 pm on 12/26/17 that corresponds to the roughly the elapsed time of 3 minutes and 51 seconds in that video, I'm clearly heard ordering defendants Harris and Perez as well as other members of the NYPD who were then where I was while I was illegally still on the ground and being seized and assaulted by members of the NYPD to get off of me because I was having difficulty breathing. When defendant Harris later was interviewed on 2/2/18 by Judith Le of the CCRB in response to entirely valid complaints that I reported to the CCRB that were partly against him and defendant Perez, Mr. Harris lied to her by claiming that I never complained to him on 12/26/17 while I was being arrested about having difficulty breathing because people were on my chest. His lie to her then about that led her to playback the video recording of his NYPD body-camera that I have been discussing above while she continued to interview him as she established that he lied to her about that in the presence of an attorney who

was representing him during that interview. When he was thereafter asked during that interview about whether he wanted to change his original answer about whether I complained to him on 12/26/17 about having difficulty breathing because members of the NYPD were on top of my chest while I was on the ground during the illegal arrest process, he still declined to change his answer and continue to lie by fraudulently claiming that no one was on my chest during the illegal arrest process.

29.     At 7:21:42 pm on 12/26/17 that corresponds to the roughly the elapsed time of 4 minutes and 38 seconds in that video that was recorded by defendant Harris' NYPD body-camera, I'm clearly heard describing to other unknown members of the NYPD who were then nearby how I was illegally stopped, assaulted, harassed, and stalked by defendants Harris and Perez on 12/26/17 when we first met in the public corridor.

30.     At 7:22:05 pm on 12/26/17 that corresponds to the roughly the elapsed time of 5 minutes and 1 seconds in that video, I'm clearly heard telling the members of the NYPD who were nearby that I was a U.S. Navy veteran and that I was exercising my constitutional rights. I immediately thereafter told them that Defendant Harris wouldn't allow me to independently confirm what his NYPD badge number was. I also then pointed out that Defendant Perez illegally put his hands on me. That prompted Defendant Perez to immediately say, "Really?". I then immediately asked about whether there were video security cameras in the public corridor where I first met defendants Harris and Perez.

31.     At 7:22:32 pm on 12/26/17 that corresponds to the roughly the elapsed time of 5 minutes and 28 seconds in that video, I'm clearly heard asking about whether was a commanding officer of the NYPD was then present near where I was. In response, a male voice is heard in that video as that person identified himself as being a NYPD supervisor as he didn't otherwise identify

himself.

32.    At 7:23:00 pm on 12/26/17 that corresponds to the roughly the elapsed time of 3 minutes

and 55 seconds in the video recording that has the filename of B17664760-2017-12-26_19-19-

34.AVI that I referenced earlier, I told a member of the NYPD who identified himself to me as

being a supervising NYPD Officer that I was illegally shoved on 4/27/17 by a member of the

NYPD as I was then referring to NYPD Officer Rafael Beato as the person who then shoved me

outside of the school that hosted the public town hall meeting that the Mayor conducted on

4/27/17 that I was illegally prevented from attending. I also told that supervising NYPD officer

then that I had active litigation against the NYPD. I also told him that the NYPD's 48th Precinct

released someone on the same date that it arrested him for assaulting me instead of keeping him

in its custody. I was then referring to my former roommate (Ronald Sullivan) for where I still as

my assailant on 7/2/16 in the apartment that we then shared that the NYPD's 48th Precinct

arrested and released on 7/11/17 after he viciously assaulted me on 7/2/16 in that apartment by

that remark. I also explicitly told him that I was then being illegally detained by the NYPD

without a valid legal justification as he illegally ignored that. I made those remarks to him as I

was being illegally arrested at the intersection of Fairmount Place and Clinton Avenue to point

out that I already had a track of illegal acts against me by members of the NYPD prior to

12/26/17 and wanted to exercise my legal right to not have anything to do with defendants Harris

and Perez as they approached me on 12/26/17 in the public corridor where we first met. In

response to my remarks, that supervising NYPD officer fraudulently told me at roughly 7:23:47

pm on 12/26/17 that I was in handcuffs then for the right reasons without elaborating at all about

that lie by him. His remark is heard in that video recording at the elapsed time of roughly 4:43

pm. The next screenshot from that video shows that NYPD supervising officer in the lower left

corner.



33.    Skipping far ahead, after I was arrested on 12/26/17 by the NYPD, I was taken to St.

Barnabas Hospital in the Bronx to be diagnosed and treated for injuries that I sustained while I

was criminally assaulted by defendants Harris, Perez, and other members of the NYPD on that

date in relation to the interactions that I had with by defendants Harris and Perez. While I was in

that hospital, numerous members of the NYPD came there and stood near the cot on which I was

laying while I was handcuffed. One of those people was Defendant Tompkins. While he was

there, he and I briefly talked about my having been illegally arrested on 12/26/17 by defendant

Harris and other members of the NYPD's 48th Precinct. He told me then that he had watched a

video recording that showed me kicking defendant Harris in his face. I knew he was lying about

that because I never did that.  I also told Defendant Tompkins then that that I was falsely accused

of trespassing on 12/26/17 by defendants Harris and Perez as they lied by fraudulently claiming that I was in a park and on school property on that date with respect to Prospect Playground and a school near it. In response, I recall that he told me that I was splitting hairs. I wasn't doing so and was instead being entirely factual. He also told me then that I may have been arrested by defendant Harris and other members of the NYPD on 12/26/17 strictly because I was "busting" his officers' chops in response to defendants Harris and Perez having illegally stopped, seized, assaulted, harassed, stalked, and injured me while I was lawfully conducting myself as I lawfully walked along the public corridor where I first met defendants Harris and Perez on 12/26/17. My conversation with defendant Tompkins occurred while defendant Harris was next to the cot that I was laying on and other unknown members of the NYPD were present nearby. I also recall having asked members of the NYPD to have a different member of the NYPD other than defendant Harris to accompany me in that hospital for obvious reasons after defendant Harris criminally assaulted me on 12/26/17 that set of the entire chain of events. However, that entirely reasonable request was ignored to add insult to injury. Concerning this point, defendant Harris illegally struck my chest several times with one of his hands that further constituted assault against me while my hands were handcuffed behind my back while we were in an ambulance that drove us from the NYPD's 48th Precinct to St. Barnabas Hospital as a paramedic witnessed that occur in the back of that ambulance. Mr. Harris struck me then to try to further antagonize me. Mr. Harris also illegally jerked the handcuffs that I wore behind my back to cause me discomfort. That occurred as I was taken to and from St. Barnabas Hospital between 12/26/17 and 12/27/17. Also, though the NYPD was responsible for collecting and safeguarding the entirety of the property that I had with me as I was being illegally arrested on 12/26/17 until the time that I was fully released from custody, the NYPD illegally didn't collect headphones that I

had with me as I was being arrested on 12/26/17 and failed to perform its duty to safeguard the

wallet that I had with me and everything in it as I was arrested on 12/26/17. Although the NYPD

gave me back my wallet on 12/26/17 while I was in NYPD custody, that doesn't change and

otherwise diminish the fact that the NYPD had a legal duty to make certain that my wallet and

everything in it would not be lost while I was in the NYPD's custody. However, that is exactly

what happened at some point between the time when I was in St. Barnabas Hospital with

defendant Harris and transported back to the NYPD's 48th Precinct. Due to the loss of my wallet

during that period, items that were in it can be used to commit identity-theft against me and I

also lost valuable business cards that were issued to me by people who worked in journalism. I

also had some money in that wallet when it was lost during that period. That wallet may possibly

have fallen out of one of my pockets while I was being escorted out of St. Barnabas Hospital by

defendant Harris as he was illegally jerking the handcuffs I wore behind my back.

34.     Returning back to my earlier discussion about the immediate aftermath of my having

been illegally arrested on 12/26/17, after I was arrested then, I was transported in a NYPD SUV

vehicle from where I was arrested directly to the NYPD's 48th Precinct. At 7:35:19 pm on

12/26/17 that corresponds to the roughly the elapsed time of 16 minutes and 15 seconds in the

video recording that I just discussed, I'm clearly heard telling defendant Harris that no signs

were posted when he and I first met on that date in the public corridor that informed people that

they were not allowed to walk through that corridor. In response, Mr. Harris promptly told me in

that video that that wasn't his fault as we then were in front of a jail cell in that NYPD precinct.

Mr. Harris lied at other times by fraudulently claiming that "no trespassing" signs were posted

near the public corridor where he and I met.

35.     At 7:36:31 pm on 12/26/17 that corresponds to the roughly the elapsed time of 17

minutes and 26 seconds in that video, Defendant Harris confirmed that he was about to deliberately cause damage to the sweatpants that I was then wearing by cutting its string.

36.    Upon information and belief, Defendants Holmes and Lin were among other members of the NYPD who illegally assaulted me by subjecting me to physical contact that I regarded as offensive near the intersection of Fairmount Place and Clinton Avenue between 7:17 pm and 7:30 pm on 12/26/17 either while **a)** I was on the ground after I was forcibly taken down to the ground by members of the NYPD in that area on that date during that period or **b)** I was standing and they were making physical contact with my body or clothing.

37.    Upon information and belief, Defendant Amill was the member of the NYPD who identified himself as a supervising NYPD officer who talked with me on 12/26/17 near the intersection of Fairmount Place and Clinton Avenue between 7:17 pm and 7:30 pm on 12/26/17 as he lied to me by fraudulently claiming that I was in handcuffs during that period at that location for the right reason without elaborating further that I discussed earlier.

38.    On 5/31/18, the CCRB issued a report for CCRB case number 20171066 in response to entirely valid complaints that I reported to it partly against defendants Harris and Perez for the illegal acts and omissions that were committed against me on 12/26/17 in relation to my interactions on that date with defendants Harris and Perez. Information in that report indicates that the CCRB exonerated defendants Harris, Perez, Lin, and Holmes partly for physical force that was used against me on 12/26/17. This means that the CCRB determined that though physical force was used by them against me on 12/26/17, the CCRB determined that defendants Harris, Perez, Lin, and Holmes were not liable for that use of physical force against me. However, the CCRB was entirely wrong to hold them not liable for that because there was absolutely no legal justification for any physical contact to have been made by them against me

on 12/26/17. Since I can't presently match defendants Lin and Holmes with what appears in video recordings that I received that likely shows them in those videos because I haven't yet received information that identifies them in that way, I need to be able to engage in discovery in this case to ascertain what Defendants Lin and Holmes look like in order to be able to properly assert entirely valid legal claims against them in this case.

39.     Also, the audio recording that I discussed earlier in this complaint that has the filename of "Komatsu-Phone-Interview-Sargeant Amill.wav" includes a remark by a member of the of the NYPD at the elapsed time of 3 minutes and 11 seconds that indicated that I had a bruise to my chin and a cut to one of my fingers as a result of my interactions with defendants Harris, Perez, Holmes, Lin, and/or other members of the NYPD between 7:17 pm and 7:30 pm on 12/26/17. A medical report that was issued at 11:47 pm on 12/26/17 by St. Barnabas Hospital indicates that I was diagnosed with having an abrasion to one of my fingers and a sprain of one of my fingers. Those injuries resulted from my having been assaulted by members of the NYPD between 7:17 pm and 7:30 pm on 12/26/17. Apparently, those who performed that diagnosis missed the fact that my chin was also bruised.

40.     On 3/19/18, Alexander Opoku-Agyemang and Judith Le of the CCRB jointly issued a report that corresponds to CCRB case number 201710666 in which they materially lied about applicable facts and otherwise made materially deceitful and misleading remarks about the circumstances that occurred on 12/26/17 involving me and defendants Harris and Perez that resulted in my having been illegally arrested by the NYPD on that date. That CCRB report includes the following determinations by Ms. Le and Mr. Opoku-Agyemang that essentially confirm that the CCRB and its personnel are useless and cover-up illegal acts and omissions by members of the NYPD:

a.    It's undisputed that I was walking within the school grounds of Public School 211 on 12/26/17. This is a complete lie because I disputed that and I was never on the grounds of that school on 12/26/17.

b.    Defendants Harris and Perez provided me their names and NYPD shield numbers. This fraudulently omits the material fact that Defendant Harris illegally obstructed my ability to see his NYPD shield information firsthand.

c.    The Google Streetview image of the corridor in which I first met defendants Harris and Perez on 12/26/17 shows that that area is located between Public School 211 and the park named Prospect Playground and that that area appears to be fully encompassed within school property.  This confirms that the CCRB's personnel were inexcusably lazy and derelict by not actually visiting that location to see the fencing around that park and the vertical partition that ran parallel to the public corridor in which defendants Harris and Perez illegally stopped me. That vertical partition that public corridor was not part of school property.

d.    I trespassed on school property on 12/26/17. This is a lie and the trespassing charge that was initially filed against me was voided by 6/22/18 as I discussed earlier.

e.    Defendants Harris and Perez saw me engaging in trespassing on 12/26/17 and therefore had reasonable suspicion to stop me. This is a lie.

f.    Defendant Harris believed that I was an emotionally-disturbed person. This is a lie. He fraudulently made that determination instead as a pretext to subject me to an abuse of process, a false arrest, and First Amendment retaliation in response to my complaints against him and defendant Perez.

g.      Medical records that St. Barnabas Hospital issued on 12/26/17 about me show that I was listed as suffering from psychiatric problems and self-described mood swings. This is a total lie. The records that I received from St. Barnabas Hospital that correspond to my visit to it on 12/26/17 do not contain any of that information.

h.      I threatened to spit on Defendants Harris and Perez on 12/26/17. This is a total lie.

i.       I kicked defendant Harris on his back. This is a lie.

j.       Injuries that I sustained on 12/26/17 due to my interactions with members of the NYPD were unintentional by them. This is mostly a lie because they deliberately initiated physical contact against me while criminally assaulting me.

41.      My claims against Darcel Clark, Neelam Chhikara, and Alana Brady mainly stem from the fact that I continued to be illegally prosecuted by them **a)** after the trespassing and assault charges that were filed against me on 12/26/17 were voided by 6/22/18 and **b)** while Ms. Clark was responsible for how the Bronx DA operated. My claims against them also stem from the fact that they didn't provide me nor my attorneys in my Bronx criminal case the entirety of the discovery material that they were ordered to provide to me before that case was dismissed. I also recall having twice talked with Ms. Clark face-to-face about that entirely frivolous and malicious prosecution long before it was dismissed as I asked her why it was continuing to be commenced against me without getting an appropriate response. I had such brief conversations with her about that during a public hearing that was conducted in the Committee Room inside of City Hall by a committee of the City Council and also during a public town hall meeting that was conducted in the Bronx near the Bronx Criminal Court partly by Vanessa Gibson of the City Council and the Mayor. While I had those conversations with her about that, I handed her information about that

entirely frivolous and malicious prosecution. Among other things, this means that she illegally didn't perform her affirmative Fourteenth Amendment legal duty to have that entirely frivolous and malicious prosecution against me dismissed long before it was dismissed on 1/23/20. Concerning this point, Defendant Clark's own words on 9/9/19 during a public hearing in which she testified to members of the New York State Senate prove that she is a vile cat's paw of the NYPD. During that public hearing that was recorded on video, she stated the following as I sat in the room in which that hearing was conducted:

"What should I do? Prosecute the Police Department? I can't do that"

42.    Defendant Clark made the preceding remark at the elapsed time of 1 hour, 4 minutes, and 54 seconds from the beginning of the video recording that the New York State Senate arranged to be recorded of that public hearing. That video recording is available on the Internet at https://www.youtube.com/watch?v=OHjKnLFqXOI.

43.    Furthermore, information about an interview that was conducted on 3/12/18 by Steve Ortiz of the IAB of Defendant Perez that corresponds to IAB log number 2018-1083 about my interactions with him (Mr. Perez) and defendant Harris on 12/26/17 confirms that defendant Perez partly lied to Mr. Ortiz during that interview about material facts by making the following claims:

a.    He (defendant Perez) and defendant Harris observed me walking through a park on 12/26/17.

b.    Defendant Harris turned on his NYPD body-camera roughly 5 minutes after he and defendant Perez began interacting with me on 12/26/17. This is a lie. That was turned on more than roughly 20 minutes later instead of having been properly turned on while we were in the public corridor where we first met.

c.  Neither he nor Defendant Harris stopped me in the public corridor where we met on 12/26/17 and they didn't do so because they claimed that I was trespassing. This is a total lie.

44.  Similarly, information about an interview that was conducted on 3/12/18 by Defendant Ortiz of Defendant Harris that corresponds to IAB log number 2018-1083 about my interactions with him (Mr. Harris) and defendant Perez on 12/26/17 confirms that defendant Harris partly lied to Mr. Ortiz during that interview about material facts by making the following claims:

a.  He (Defendant Harris) and defendant Perez observed me walking through a park on 12/26/17.

b.  He claimed that he never touched me while we were in the public corridor where I first met him and Defendant Perez on 12/26/17.

c.  He decided to arrest me for pushing him. He omitted the material fact that he criminally assaulted me first and I reacted with legal self-defense.

d.  I threatened to throw urine on him while I was at St. Barnabas Hospital. Although I made sarcastic remarks about that, that wasn't a threat.

e.  Nurses at St. Barnabas Hospital agreed with him that I needed to be subjected to a psychological evaluation. No such agreement occurred and I was never subjected to a psychological evaluation at St. Barnabas Hospital.

f.  He didn't subject me to a stop on 12/26/17 in the public corridor where I first met him and that I was free to go at any time in that corridor. This was a total lie.

45.  A report that was issued by the NYPD that contained findings dated 3/25/18 that were issued and otherwise approved of by Jeffrey Peattie, Matthew Pereira, and Michael Dario of the useless IAB about entirely valid complaints that I reported to IAB against Defendants Harris and

Perez in response to their illegal acts against me on 12/26/17 confirms that they fraudulently upheld fraudulent claims that were reported to them by defendants Harris and Perez instead of conducting an objective and diligent investigation about my complaints. Among other things, the findings that Mr. Peattie, Mr. Pereira, and Mr. Dario issued or otherwise approved of on 3/25/18 about my complaints included the following fraudulent determinations by them:

     a.    Defendant Harris conducted a lawful stop of me on 12/26/17 inside of the public corridor where I first met him. This is a total lie.

     b.    The loss of my wallet while I was in NYPD custody between 12/26/17 and 12/27/17 was unsubstantiated. This is a total lie because the NYPD was responsible for properly safeguarding the entirety of my property throughout the entire period during which I was in its custody.

     c.    Defendant Perez conducted a lawful arrest of me on 12/26/17 for disorderly conduct, obstruction of governmental administration, and harassment. Contrary to that lie, that was totally illegal because no objectively valid legal justification existed for it.

     d.    Defendant Perez should have charged me with trespassing on 12/26/17. This is a total lie for the same reasons.

46.    A report that was issued by the NYPD that contained findings dated 3/26/18 that were issued and otherwise approved of by Andrew Benjamin of IAB about entirely valid complaints that I reported to IAB against Defendants Harris and Perez in response to their illegal acts against me on 12/26/17 confirms that he fraudulently upheld fraudulent claims that were reported to him indirectly by defendants Harris and Perez instead of conducting an objective and diligent investigation about my complaints. Among other things, the findings that Mr. Benjamin ratified

on 3/26/18 about my complaints included the following fraudulent determinations by him:

    a.    He exonerated members of the NYPD for failing to properly safeguard my wallet while I was in NYPD custody between 12/26/17 and 12/27/17 throughout that entire period.

    b.    Defendants Harris and Perez used minimal force against me on 12/26/17. This is a lie. Mr. Harris' kick against me while we were in the public corridor where I first met him on 12/26/17 was entirely illegal.

    c.    Defendants Harris and Perez conducted a lawful stop of me on 12/26/17 inside of the public corridor where I first met them. This is a total lie.

    d.    Defendants Harris and Perez observed me being in a park on 12/26/17. This is a total lie.

47.    According to an NYPD arrest report that Defendant Perez completed in response to my having been arrested by the NYPD on 12/26/17, Mr. Perez indicated that defendants Lin and Rodriguez were among additional members of the NYPD who were wearing NYPD body-cameras on 12/26/17 as I was being arrested by the NYPD while they were at the scene of my arrest. This also means that all of those defendants illegally failed to intervene on my behalf to prevent and otherwise end that illegal arrest of me.

48.    Due to my having been illegally arrested on 12/26/17 and thereafter frivolously and maliciously prosecuted in response to that as well, I had to spend just over 2 years and an enormous amount of effort on my part to be fully exonerated of the entirely false and fraudulent charges that were filed against me in my Bronx criminal case. This is partly because there were numerous court hearings in that case that I had to attend. This is also due to the fact that I had to contend with utterly incompetent and non-responsive attorneys that I was assigned for that case

that included Elana Silberman of the Legal Aid Society, a private attorney named John K. Lee,

and a third attorney whose name I don't recall before I fired all 3 of them and was thereafter

assigned proper legal counsel for that case. The amount of time and energy that I spent to have

myself exonerated in that case was enormous and involved an extraordinary amount of legal

research on my part. That also meant that I had to sacrifice an enormous amount of time from

searching for jobs and other necessary activities that partly included engaging in studying to

sharpen and broaden my jobs skills and attending to entirely valid litigation that I commenced

and would have otherwise commenced during that period. In short, I was subjected to enormous

stress as a result of having been illegally arrested on 12/26/17 and prosecuted thereafter in

response to that. I similarly experienced enormous stress about the circumstances that caused me

to be illegally arrested on 12/26/17 and the illegal cover-up that the NYPD, CCRB, and Bronx

DA engaged in about that illegal arrest by ignoring relevant facts and illegally withholding

exculpatory evidence in my favor.

49.     Furthermore, just over 3 months after Defendant Harris illegally committed acts against

me on 12/16/17 that I have discussed in this complaint, he illegally committed similar acts and

omissions against others in the Bronx on 3/20/18 that involved people who were in a car as he

illegally didn't **a)** properly use his NYPD body-camera to record his interactions with the people

in that car; **b)** prepare stop, question, and frisk reports as he was required to do; and **c)** prepare

memo book entries as he was required to do. His interactions with the people in that car occurred

at the intersection of East Tremont Avenue and 177th Street in the Bronx at roughly 9:18 pm.

This information is from reports that the CCRB issued that correspond to CCRB case number

201802306 that I obtained as a result of discovery in my Bronx criminal case.

50.     I nearly forgot to point out that besides having illegally not used recorded the entirety of

my interactions with him and defendant Perez on 12/26/17, Defendant Harris also similarly and illegally failed to **a)** properly prepare complete memo book entries and **b)** issue a stop, question, and frisk report in response to my interactions with him on 12/26/17 and 12/27/17.

51.    When I realized that my wallet was missing on 12/27/17, I promptly notified the NYPD's 48th Precinct about that. However, its personnel illegally failed to conduct a diligent search for it at locations that included within St. Barnabas Hospital in the Bronx.

## CAUSES OF ACTION

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

**CLAIM #1:**                               **False Arrest**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #2:**                               **Malicious Prosecution**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, Ortiz, Peattie, Pereira, Dario, Benjamin, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady,)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #3:**                              **Excessive Force**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez,)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #4:**                          **Unlawful Search and Seizure**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez,)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #5:**        **Failure to Properly Safeguard Plaintiff's Property While Plaintiff was in NYPD Custody Between 12/26/17 and 12/27/17**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #6:** <u>**Harassment**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #7:** <u>**Battery**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #8:** <u>**Damage to Plaintiff's Property and Failure to Collect All of Plaintiff's Property While Plaintiff was in the NYPD's Custody Between 12/26/17 and 12/27/17**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

3. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #9:** <u>**Spoliation of Evidence**</u>

(Against Defendants City of New York, Harris, Perez)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #10:**          **Failure to Disclose Exculpatory Evidence**

(Against Defendants City of New York, Harris, Perez, Chhikara, Clark, Brady)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #11:**          **Conspiracy to Cover-Up NYPD Misconduct**

(Against Defendants City of New York, Harris, Perez, Amill, Tompkins, Chhikara, Clark, Brady)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #12:**          **Denial of Access to the Courts**

(Against Defendants City of New York, Harris, Perez, Amill, Tompkins, Chhikara, Clark, Brady)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set

forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #13:**                    **Stigma-Plus Defamation**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Amill, Tompkins, NYPD Jane Doe1)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #14:** Violations of the First Amendment right of access to a public forum, to protest in a public forum, to receive information in a public forum, to distribute whistleblowing literature in a public forum, to engage in lawful assembly in a public forum, to engage in freedom of expression in a public forum, to otherwise engage in whistleblowing and criticism of government officials in a public forum, to engage in expressive association, and to petition government officials in a public forum for redress of grievances

(Against Defendants City of New York, Harris, Perez, Amill, Tompkins, Chhikara, Clark, Brady)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I stated earlier in this complaint.

**CLAIM #15:**    **First Amendment Retaliation, Viewpoint Discrimination,**
**and Standardless Discretion in Denying Access to a Public Forum**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill,

Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD
John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #16:**                    <u>**Violations of the Fourth Amendment**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill,
Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD
John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #17:**                    <u>**Violations of the Fifth Amendment**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill,
Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD
John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #18:**                    <u>**Violations of the Fourteenth Amendment**</u>
                                   <u>**Substantive Due Process Rights**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill,

Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #19:**                **Violations of Procedural Due Process**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #20:**                **Violations of the Fourteenth Amendment**
                **Equal Protection Rights**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #21:**                **Violations of the Fourteenth Amendment**
                **Prohibitions Against Selective-Enforcement**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #21:**              **<u>Failure to Intervene in Violation of the</u>**
**<u>Fourteenth Amendment</u>**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #22:**              **<u>Failure to Train and Supervise</u>**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #23:**              **<u>Malicious Abuse of Process</u>**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


**CLAIM #24:**                       <u>**Deliberate Indifference**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


**CLAIM #25:**    <u>**Fraudulent Misrepresentation and Fraudulent Inducement**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


**CLAIM #26:**                       <u>**Negligence**</u>

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #27:**                              **Municipal Liability**

**(Against Defendant City of New York)**

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      Defendant City of New York is liable for this claim due to the information that I presented in this complaint.

**CLAIM #28:**      **Intentional and Negligent Infliction of Emotional Distress**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #29:**                              **Unjust Enrichment**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD

John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #30:**                **Public and Private Nuisance**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7, Chhikara, Clark, Brady)

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #31:**                **Violation of My Privacy Rights**

(Against Defendants City of New York, Harris, Perez, Lin, Holmes, Rodriguez, Amill, Tompkins, NYPD Jane Doe1, NYPD John Doe1, NYPD John Doe2, NYPD John Doe3, NYPD John Doe4, NYPD John Doe5, NYPD John Doe6, NYPD John Doe7)

3.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

4.    The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

## DEMAND FOR A JURY TRIAL

1.    I demand a trial by jury in this action on each and every one of my damage claims.

## PRAYER FOR RELIEF

WHEREFORE, this Court should accept jurisdiction over this entire matter and grant me additional relief by:

1.    Empaneling a jury to hear and decide this case strictly on its merits.

2.    Granting me damages that include punitive damages for each of my causes of action.

3.    Granting me permanent injunctive relief against the City of New York and the NYPD to prevent my constitutional rights and other legal rights from continuing to be violated by their personnel.

4.    Ordering the City of New York to immediately provide me all NYPD audit trail records that correspond to the NYPD body-cameras that were in use on 12/26/17 that were related to the interactions that I had that ultimately led to my being arrested on 12/26/17.

5.    Granting me immediate summary judgment for my claims about 12/26/17 and my having thereafter been prosecuted in my Bronx criminal case.

6.    Granting all other relief that I have requested elsewhere in this complaint.

7.    Ordering the City of New York let me immediately and prominently paint large messages in accordance with First Amendment and Fourteenth Amendment rights on public streets and sidewalks throughout New York City that will be consistently and rigorously protected by the NYPD that state, "NYPD & CCRB Lives Don't Matter".

8.    Granting me such other, further, and different relief as the interests of justice and equity may require.


Dated:        New York, New York
              April 3, 2021

From,

s_/Towaki Komatsu

*Plaintiff, Pro Se*
802 Fairmount Pl., Apt. 4B
Bronx, NY 10460
(347) 872-1205
Towaki_Komatsu@yahoo.com

# Exhibit A

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX

CERTIFICATE OF DISPOSITION
NUMBER:   224727

THE PEOPLE OF THE STATE OF NEW  YORK
VS

KOMATSU,TOWAKI M
Defendant

████████████

Date of Birth

████████████████

Address

NYSID Number

City                    State   Zip

12/26/2017
Date of Arrest/Issue

Docket Number: 2017BX048917

Summons No:

PL 205.30 00 AM,PL 120.00 01 AM,
Arraignment Charges

Case Disposition Information:

| Date | Court Action | Judge | Part |
|------|--------------|-------|------|
| 01/23/2020 | DISMISSED AND SEALED | COLLINS,T | TP6 |

SEALED

pursuant to Section 160.50 of the CPl

NO FEE CERTIFICATION

_ GOVERNMENT AGENCY      _ COUNSEL ASSIGNED

_ NO RECORD OF ATTORNEY READILY AVAILABLE. DEFENDANT STATES COUNSEL WAS ASSIGNED

SOURCE _ ACCUSATORY INSTRUMENT _ DOCKET BOOK/CRIMS _ CRC3030[CRS963]

    I HEREBY CERTIFY THAT THIS IS A TRUE EXCERPT OF THE RECORD ON FILE IN
THIS COURT.

PERRY,T
COURT OFFICIAL SIGNATURE AND SEAL

02/03/2020
DATE        FEE: NONE

Marijuana convictions under PL 221.05 or PL 221.10 are vacated, dismissed
and expunged as of August 28, 2019. The court system is in the process of
updating its records, but in the meantime, it is an unlawful discriminatory
practice unless specifically required or permitted by statute, for any
entity to make any inquiry about an expunged conviction or to use an
expunged conviction adversely, whether in any form of application or
otherwise, against such individual.

Pursuant to section 70.15 of the Penal Law, any misdemeanor sentence with
a jail term of "1 year", "12 months", or "365 days" is, by operation of
law, deemed to be a sentence of 364 days. Any Certificate of Disposition
indicating a jail sentence of "1 year", "12 months", "52 weeks", or
"365 days" for a misdmeanor conviction shall be interpreted as a sentence
of 364 days.